UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | No. 3:19-cr-295 (VLB) |
| V. : | |
| : | |
| DOMENICO SANDALO : | April 10, 2020 |
| Defendant. : | |
| : | |

### Ruling and Order Denying Defendant's Motion to Compel [Dkt. 53]

Defendant Domenico Sandalo moves to compel the Government to produce two categories of discovery to the defense to inform a possible forthcoming motion to suppress: discovery regarding confidential informants and discovery regarding law enforcement rules, regulations, policies, training and/or guidance. [Dkts. 53 (Mot.), 54 (Mem. Supp. Mot.), 55 (Exs.)]. The Government opposes the motion. [Dkt. 56]. For the reasons that follow, the Court denies the motion.

I.   Charges and Case Background

On June 6, 2019, the Hon. Stephanie McLaughlin, Connecticut Superior Court Judge, authorized the issuance of a search warrant for 5 Mohackemo Drive, Norwalk, Connecticut. [Dkt. 55-5 (Ex. E: Search and Seizure Warrant). The affidavit supporting the warrant was authored and sworn to by Officer Michael Connelly of the Stamford Police Department and Officer Mark Suda of the Norwalk Police Department. [Dkt. 55-3 (Ex. C: Affidavit and Application)].

The affidavit states as follows:

> 2. Starting within the month of January 2019 and continuing through June 2019, a credible and reliable Confidential Informant or (C/I)

contacted Affiant Connelly and stated that he/she had knowledge that a large amount of Oxycodone pills, power cocaine and marijuana were currently being dealt by a male whom the C/I identified as Domenico Sandalo, D.O.B. 05/03/74 of 5 Mohackemo Drive Norwalk, CT. The C/I stated that he/she has knowledge that Sandalo transports delivers and sells a large amount of Oxycodone Pills, powder cocaine and marijuana within the City of Norwalk, CT.

…

4. The C/I providing this information has given Affiant Connelly as well as other members of the Stamford Police Narcotics and Organized Crime Unit reliable and accurate information in the past, which has been corroborated through an independent investigation…. [and] which has resulted in numerous arrests and seizures narcotics on several occasions.

…

6. Through the Affiant's independent investigation, they discovered that between the months of October 2009 through January 2010, the Drug Enforcement Administration (DEA) and the Norwalk, CT Police Department conducted a joint investigation into Sandalo. Through this investigation, the DEA and the Norwalk Police Department conducted several undercover purchases of OxyContin pills from Sandalo. The investigation concluded on January 27th, 2010, which resulted in Sandalo's arrest and a search of his residence of *5* Mohackemo Drive Norwalk, CT, which resulted in the seizure of: 731 OxyContin Pills, 683 Percocet Pills; 190 Hydrocodone pills, approximately (6) kilograms of marijuana and $103,028.00 in U.S. Currency. As a result of this investigation, Sandalo was convicted and sentenced to 70 months in Federal prison followed by three years of supervised release.

7. It was also discovered that between the months of September 2016 and December 2016, the DEA and Norwalk Police Department conducted an additional investigation into Sandalo. During this time frame, The DEA and Norwalk Police Department utilized a Confidential Source (CS) to conduct several controlled purchases of OxyCodone pills from Sandalo and his residence located at *5* Mohackemo Dr., Norwalk, CT. The status of the 2016 investigation is still currently open.

…

9. The Affiants were able to confirm through several Law Enforcement databases that Domenico Sandalo is listed as residing at *5* Mohackemo Drive Norwalk, CT.

…

**11. During the month of January 2019, Affiant Connelly and Stamford police Narcotics Officer C. Pennoyer met with the previously stated C/1 at a pre-arranged meet location for the purpose of conducting a controlled phone contact with Domenico Sandalo. The C/1 and Sandalo made contact via both SMS / text and phone calls utilizing (2) of Sandalo's phone numbers of 585-635-5962 and 203-253-6224. During the conversations, Affiant Connelly observed that Sandalo advised the C/1 that he (Sandalo) was currently waiting to receive a large shipment of Oxycodone pills, which he was then planning to sell. Therefore Affiant Connelly was able to directly confirm and corroborate the above stated information.**

**12. … it was confirmed that Norwalk Special Services Officers were aware through physical observation and C/I information that Sandalo does in fact currently reside at 5 Mohackemo Drive Norwalk, CT.**

**13. On this date 06/06/19, the above stated C/I contacted Affiant Connelly and stated that Sandalo is currently in possession of a large amount of powder cocaine (approximately 1 kilo), hundreds of oxycodone pills (described as approximately 600 pills, light blue in color) and multiple pounds of marijuana. The C/I stated that the above stated narcotics are being stored within Sandalo's residence and that Uie C/I observed the narcotics within Sandalo's residence (5 Mohackemo Drive Norwalk, CT) within the last 24 hours. The C/I stated that Sandalo utilizes the residence as the storage area for his (Sandalo's) narcotics and that Sandalo will, package, weigh and distribute the narcotics from his residence. The C/I stated that he/she has observed in the past that Sandalo occasionally conceals amounts of narcotics around the curtilage of the residence. ·**

[Dkt. 55-3 at 2-5].

The calls and texts referenced in paragraph 11 apparently were not recorded, the phone not vouchered, and the communications not otherwise memorialized in writing. [Dkt. 55 (Attorney King Decl.) at ¶ 12].

Pursuant to the warrant, on June 6, 2019, agents and task force officers of the Drug Enforcement Administration executed a search and seizure of Mr. Sandalo's home. While law enforcement agents wore body cameras, the videos

end shortly after the agents enter the residence. [Dkt. 55 at ¶10]. Search teams located 602 grams of powder cocaine, approximately 6 kilograms of marijuana, 771 THC vape cartridges, 77 Oxycodone pills, 46 Fentanyl pills, multiple vials of human growth hormone, assorted steroids, and $53,943.00 in U.S. dollars. [Dkt. 56 at 1]. Following the search and seizure, Domenico Sandalo was arrested by the Norwalk Police Department that day.

The federal indictment charges Mr. Sandalo with two counts, apparently on the basis of the search: Possession with Intent to Distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§841(a)(a) and 841(b)(1)(B)(ii)(II), and Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C), based on the allegation that he possessed with intent to distribute oxycodone, fentanyl, and marijuana. [Dkt. 34 (Indictment)].

II. <u>Analysis</u>

A. <u>*Discovery of information regarding informants*</u>

First, Mr. Sandalo moves for a court order compelling the Government to disclose to the defense

> the full name, address, and phone number of the confidential source ("CS") and confidential informant ("CI") referenced in the affidavit and application for a search and seizure warrant dated June 6, 2019, and produce, or at least make available for inspection and copying, to the defense all evidence related to their assistance with law enforcement's investigation of Mr. Sandalo, including, but not limited to, their criminal histories; cooperation agreements; any and all documents reflecting any benefits they received or were promised for their assistance; any and all documents reflecting their interactions with Mr. Sandalo, any member of law enforcement, and/or any member of a prosecutor's office (i.e. texts, social media messages, e-mails, notes, memos, reports, etc.); any and all audio and/or video recordings of their interactions with Mr. Sandalo, any

member of law enforcement, and/or any member of a prosecutor's office; any and all evidence that law enforcement obtained as a result of a Ping (GPS) order or pen register that captured Mr. Sandalo's activity; and any and all drugs that law enforcement obtained as a result of CS's and/or CI's assistance against Mr. Sandalo.

[Dkt. 54 at 1-2]. As a general matter, the government is not required to disclose the identity of a confidential informant, even for trial. *See Roviaro v. United States*, 353 U.S. 53, 59 (1957). Mr. Sandalo bears the burden of establishing the need for such disclosure. *United States v. Manley*, 632 F.2d 978, 985 (2d Cir. 1980), *cert. denied,* 449 U.S. 1112 (1981). But, "where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused,or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60–61 (1957)

At a suppression hearing, "disclosure of the identity of an informer is not constitutionally required even though his information is the sole basis for probable cause." *United States v. Comissiong*, 429 F.2d 834, 837 (2d Cir. 1970) (Friendly, J.) (citing *McCray v. Illinois*, 386 U.S. 300 (1967)). "Where the Defendant seeks disclosure of the identity of an informant on a motion to suppress, disclosure will be deemed appropriate only where the information from the informant constitutes the 'essence, core, or main bulk' of the evidence which would establish probable cause, and 'where the critical information ascribed to [the informant] is not in any significant manner corroborated by independent evidence.'" *United States v. Holguin*, 946 F. Supp. 157, 159 (D. Conn. 1996) (quoting *Manley,* 632 F.2d at 985) (citations omitted). A law enforcement agent's observation of a narcotics transaction or a defendant's possession of illegal narcotics may constitute

sufficient independent evidence. *See Comissiong*, 429 F.2d at 836 (Friendly, J.) (disclosure of informant's identity not required where two law enforcement agents witnessed defendant putting suspicious packet into his back pocket); *United States v. Tucker*, 380 F.2d 206, 210 (2d Cir. 1967) (disclosure of informant's identity not required where two law enforcement agents observed suspected narcotics transaction).

But, where the independent evidence consists of police officers' testimony and a defendant presents evidence that "fairly puts in issue" the truth of that testimony, the police officers' testimony is insufficient independent evidence. *Holguin*, 946 F. Supp. at 160-61 (ordering *in camera* examination of the informant where defendant provided evidence that put police testimony that informant existed into doubt and issue had bearing on motion to suppress). In the absence of such evidence "where the request for the disclosure of an informant is made for the purpose of casting doubt upon the credibility of government witnesses, it will not overcome the informant's privilege." *Id.* at 159.

Here, the Court finds that the Government need not provide the identities of or any discovery that would readily identify the informants because the critical information ascribed to the informants was corroborated by independent evidence, and Mr. Sandalo presents no evidence that "fairly puts in issue" the truth of that evidence. One of the police officer affiants listened to a call between Mr. Sandalo and an informant, and directly "observed that Sandalo advised the [informant] that he (Sandalo) was currently waiting to receive a large shipment of Oxycodone pills, which he was then planning to sell." [Dkt. 55-3 at ¶ 11]. While Mr. Sandalo questions

why the calls were not recorded, the informant's phone was not vouchered, and why the communications were not memorialized in writing at the time, he neither claims nor provides any evidence against the existence of the calls or texts. [Dkt. 54 at 7]; *cf. Holguin*, 946 F. Supp. 157 at 160-61 (defendant supplied affidavits and testimony contesting police officers' version of events). In the absence of such evidence, his request is made simply "for the purpose of casting doubt upon the credibility of government witnesses," and it does not overcome the informant's privilege. The Court denies his motion to compel as to this information.

B. *Rules, Regulations, Policies, Training and/or Guidance*

Mr. Sandalo also argues that he is entitled to receive the rules, regulations, policies, training and guidance documents for the Norwalk Police Department, the Fairfield Police Department, and the Drug Enforcement Agency for the relevant time periods relating to (1) using a confidential source to conduct controlled purchases; (2) capture or preserving evidence; and (3) use of body camera footage. [Dkt. 54 at 2-3]. He believes that discovery will prove that law enforcement violated their own rules in handling the informants, in failing to capture and preserved evidence, to supervise and direct the informants' interactions with Mr. Sandalo, and in failing to record footage of their search of Mr. Sandalo's purported residence. *Id.* at 17-18.

Documents are discoverable if they are "material to the defense" and the government intends to use them in its case in chief. Fed. R. Crim. P. 16(a)(1). A document is material to the defense if "it could be used to counter the government's case or to bolster a defense; information not meeting either of those

criteria is not to be deemed material within the meaning of the Rule merely because the government may be able to use it to rebut a defense position . . . . Nor is it to be deemed material merely because it would have dissuaded the defendant from proffering easily impeached testimony. *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir.1993). A document may be relevant if it makes the existence of any fact of consequence to the determination of the criminal case more or less probable. Fed. R. Evid. 401. Federal courts need not exclude evidence on the grounds that it was obtained in violation of agency rules, where agency rules are not mandated by the Constitution or Federal law. *United States v. Caceres*, 440 U.S. 741, 755 (1979) (evidence obtained in violation of IRS electronic surveillance rules); *see United States v. Wilson*, 699 F.3d 235, 244 (2d Cir. 2012) (holding that violation of ICE directive did not in and of itself establish that a customs stop violated the Fourth Amendment).

Here, the Court finds that Mr. Sandalo has not shown that the regulatory documents are material or relevant to his defense because they do not refute any charge against him, nor that they make the existence of any fact that is of consequence to the determination of his criminal case more or less probable, nor that their violation would demonstrate lack of probable cause or another violation of the Constitution or federal law. Therefore, the Court denies Mr. Sandalo's motion to compel as to these documents.

### III. Conclusion and Order

The Court DENIES Mr. Sandalo's motion to compel.

It is so ordered.

       /s/
      **Vanessa L. Bryant**
      **United States District Judge**
      **District of Connecticut**

**Dated at Hartford, Connecticut: April 10, 2020**